J-A07013-16

2016 PA Super 160

| | |
|---|---|
| THOMAS D. WALTERS AND CLARA M. WALTERS, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| UPMC PRESBYTERIAN SHADYSIDE; MAXIM HEALTHCARE SERVICES, INC., AND MEDICAL SOLUTIONS L.L.C. D/B/A MEDICAL SOLUTIONS, | |
| Appellees | No. 309 WDA 2015 |

Appeal from the Order Entered February 6, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-12-018339

| | |
|---|---|
| LINDA FICKEN AND WILLIAM FICKEN, HER HUSBAND, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| UPMC PRESBYTERIAN SHADYSIDE; MAXIM HEALTHCARE SERVICES, INC., AND MEDICAL SOLUTIONS L.L.C. D/B/A MEDICAL SOLUTIONS, | |
| Appellees | No. 310 WDA 2015 |

Appeal from the Order Entered February 6, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-12-016165

| | |
|---|---|
| WANDA J. BRAUN AND EDWIN J. BRAUN, HER HUSBAND, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |

v.

UPMC PRESBYTERIAN SHADYSIDE;
MAXIM HEALTHCARE SERVICES, INC.,
AND MEDICAL SOLUTIONS L.L.C. D/B/A
MEDICAL SOLUTIONS,

                  Appellees

No. 311 WDA 2015

Appeal from the Order Entered February 6, 2015
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD-12-024324

| | |
|---|---|
| RONNIE D. MURPHY AND CONNIE E. MCNEAL, INDIVIDUALLY, AND AS CO-EXECUTORS OF THE ESTATE OF ELEANOR Y. MURPHY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |

                  Appellants

v.

UPMC PRESBYTERIAN SHADYSIDE;
MAXIM HEALTHCARE SERVICES, INC.,
AND MEDICAL SOLUTIONS L.L.C. D/B/A
MEDICAL SOLUTIONS,

                  Appellees

No. 312 WDA 2015

Appeal from the Order Entered February 6, 2015
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD-14-000899

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

DISSENTING OPINION BY JENKINS, J.:        **FILED JULY 21, 2016**

     I respectfully dissent.  While I agree with the majority that Appellants have sufficiently pled a cause of action against UPMC for negligence, I

disagree that they have sufficiently pled a negligence cause of action against Maxim. In addition, in my view, Appellants have sufficiently pled a cause of action against UPMC for negligence *per se*.

I would therefore affirm the trial court's order sustaining the demurrer of Maxim, but reverse the order sustaining UPMC's demurrer to claims of both negligence and negligence *per se*.

In my view, Appellants did not sufficiently plead the elements of negligence against Maxim necessary to survive Maxim's preliminary objections. Appellants filed complaints against Appellees in September of 2012, and amended complaints in November of 2012. In relevant part, the amended complaints averred:

> 11. From approximately March of 2008 to May of 2008, David Kwiatkowski ("Kwiatkowski") worked at UPMC Presbyterian Hospital as a radiologic technician.
>
> 12. At that time, Kwiatkowski's employer was defendant Maxim, a staffing agency that placed Kwiatowski at UMPC (sic); in the alternative, Kwiatowski was employed by defendant UPMC, which had and exercised the ability to control and direct Kwiatkowski's job performance.
>
> 13. On or about May 7, 2008, a UPMC hospital employee observed Kwiatowski enter an operating room, lift his shirt, put a syringe in his pants, and exit the room. UPMC determined that a syringe containing fentanyl, a Schedule II narcotic, was missing, having been replaced by a syringe containing a different liquid.
>
> 14. UPMC personnel confronted Kwiatkowski and found three empty syringes with fentanyl labels were found on him. (sic) An empty morphine syringe was found in his locker. Fentanyl and opiates were found in Kwiatowski's urine.

15. Beginning on or around May 7, 2008, as a result of the above-described incident, defendant UPMC no longer allowed Kwiatowski to work at UPMC.

\*   \*   \*

25. Defendant Maxim did not report Kwiatkowski's theft, use and/or diversion of controlled substances to any state, federal, or other governmental agency, or to any law enforcement agency.

26. Defendant Maxim, as a provider of staffing to healthcare facilities, knew or should have known that Kwiatowski was addicted to controlled substances and in all likelihood had a drug problem and/or was a drug addict.

27. Defendant Maxim, as a provider of staffing to healthcare facilities, knew or should have known that medical staff such as Kwiatkowski, without intervention, will continue to engage in conduct, including theft of controlled substances in order to satisfy an individual's addiction and such conduct would be detrimental to the health and well-being of patients who come into contact with addicted individuals, such as Kwiatkowski, at healthcare facilities.

Amended Complaint, filed November 30, 2012.

The majority states:

As their premise for imposing a legal duty, Plaintiffs have pled that both UPMC and Maxim were Kwiatkowski's employers, and each **knew** of Kwiatkowski's diversion and substitution of controlled substances at UPMC and the risk presented.
\*   \*   \*

Kwiatkowski injected himself, replaced the drugs with saline, and placed the contaminated needles and syringes back on the shelf to be used on unsuspecting patients. ***UPMC communicated the nature of Kwiatkowski's criminal conduct to Maxim***, and banned him from its facilities. While Kwiatkowski was in the charge of UPMC

and Maxim, both entities **knew** he was dangerous and likely to cause bodily harm to others if not controlled.

Majority Opinion, at 13, note 7, 28 (emphasis added).

Appellants, however, do not state anywhere in their amended complaints that UPMC told Maxim of Kwiatkowski's conduct. Further, the amended complaints do not allege that Maxim placed Kwiatowski at UPMC or any other healthcare facilities while it was aware of Kwiatkowski's misconduct, nor do they allege Maxim placed Kwiatkowsi anywhere other than with UPMC. The amended complaints merely aver that "Kwiatkowski's employer was defendant Maxim, a staffing agency that placed Kwiatowski at U[PM]C" and that "Maxim, as a provider of staffing to healthcare facilities, knew **or should have known** that Kwiatowski was addicted to controlled substances and in all likelihood had a drug problem and/or was a drug addict." Amended Complaints at 12, 26 (emphasis added).

On December 20, 2012, Maxim filed preliminary objections to the amended complaint that asserted:

> Unlike Plaintiff's claims proffered against both UPMC and Medical Solutions, Plaintiffs failed to set forth, with even the slightest particularity, any duty that Maxim allegedly owed to Wife-Plaintiff or the manner in which Maxim allegedly breached such duty. Plaintiffs' Amended Complaint does not allege that UPMC, at any time, informed Maxim of the alleged malfeasance of Kwiatkowski, or that Maxim was otherwise aware of the allegations set forth against Kwiatkowski, as asserted within Plaintiff's Amended Complaint. In addition, Plaintiffs did not claim that Maxim had any affirmative duty under Pennsylvania law, federal law, or any other rule of law, to report the acts of malfeasance of Kwiatkowski, as was set

forth within their Amended Complaint. Plaintiffs merely asserted that Kwiatkowski may have been an employee of Maxim, and that Maxim placed Kwiatkowski at UPMC[.]

Maxim's Brief in Support of Preliminary Objections to Amended Complaint, filed December 20, 2012, at 13.

Pennsylvania is a fact pleading state. **Foster v. UPMC South Side HILsz**, 2 A.3d 655, 666 (Pa.Super.2010). Complaints must be pled with the factual specificity to "not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but…also formulate the issues by summarizing those facts essential to support the claim." **Id.** (citing **Lerner v. Lerner**, 954 A.2d 1229, 1234-35 (Pa.Super.2008)). A defendant may challenge the sufficiency of a pleading through preliminary objections in the nature of a demurrer. Pa.R.Civ.P. 1028(a)(4).

This Court reviews a trial court's decision sustaining or overruling preliminary objections for an error of law. **O'Donnell v. Hovnanian Enterprises, Inc.**, 29 A.3d 1183, 1186 (Pa.Super.2011). "In so doing, [this Court] employ[s] the same standard as the trial court, to wit, all material facts set forth in the Amended Complaint and inferences reasonably drawn therefrom are admitted as true." **Knight v. Springfield Hyundai**, 81 A.3d 940 (Pa.Super.2013). "Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to

establish the right to relief." ***Richmond v. McHale***, 35 A.3d 779, 783 (Pa.Super.2012).

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case i[s] free and clear of doubt.

***Weiley v. Albert Einstein Med. Ctr.***, 51 A.3d 202, 208 (Pa.Super.2012) (quoting ***Brosovic v. Nationwide Mutual Insurance Co.,*** 841 A.2d 1071, 1073 (Pa.Super.2004)).

To determine whether the trial court erred in granting Maxim's preliminary objections to Appellants' amended complaints, we must determine the legal sufficiency of the complaints and whether the facts alleged would permit recovery if ultimately proven. Specifically, we must determine whether Appellants pled facts in support of the elements of negligence against Maxim.

"Negligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right. Proof of negligence in the air, so to speak, will not do." ***Palsgraf v. Long Island R. Co.,*** 248 N.Y. 339, 341, 162 N.E. 99, 99 (1928).

The elements of a cause of action based on negligence are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss. *Burman v. Golay & Co., Inc.,* 616 A.2d 657 ([Pa.Super.]1992); *Casey v. Geiger,* 499 A.2d 606 ([Pa.Super.]1985). When considering the question of duty, it is necessary to determine "whether a defendant is under any obligation for the benefit of the particular plaintiff ... and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." *Hoffman v. Sun Pipe Line Co.,* 575 A.2d 122, 125 ([Pa.Super.]1990).

*J.E.J. v. Tri-Cty. Big Bros./Big Sisters, Inc.*, 692 A.2d 582, 584-85

(Pa.Super.1997).

The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. *See generally Dumanski v. City of Erie,* 34 A.2d 508, 509 ([Pa.]1943) (relationship between the parties), *Forster v. Manchester,* 189 A.2d 147, 150 ([Pa.]1963) (social utility), *Clewell v. Pummer,* 121 A.2d 459, 463 ([Pa.]1956) (nature of risk), *Witthoeft v. Kiskaddon,* 733 A.2d 623, 630 ([Pa.]1999) (foreseeability of harm), *Cruet v. Certain-Teed Corp.,* 639 A.2d 478, 479 ([Pa.Super.]1994) (relationship, nature of risk and public interest in the proposed solution). *See also Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Texas 1994)("In determining whether to impose a duty, this Court must consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the actor.").

*Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa.2000).

The majority finds that the "allegation that Maxim knew of Kwiatkowski's addiction and diversion of drugs suffices for our purposes of finding a duty." I disagree. I do not believe Appellants pled sufficient facts **in their amended complaints**[1] to support their claim for negligence against Maxim, because I do not think the complaints, standing alone, without reference to material neither in the complaints nor in the exhibits attached thereto, established that Maxim owed a duty to Appellants.

First, Appellants allege no facts to support the allegation that Maxim "knew **or should have known** that Kwiatowski was addicted to controlled substances and in all likelihood had a drug problem and/or was a drug addict." Amended Complaint at ¶ 26 (emphasis added). Further, without alleging Maxim had any continuing relationship with Kwiatkowski or placed him at another facility following his termination by UPMC, I do not find Maxim could have had any duty to Appellants.

When examining the **Althaus** duty factors, the facts in the complaint do not weigh in favor of imposing a duty on Maxim. I agree with the majority that the second, third and fifth factors weigh in favor of imposing a duty, however, I find that the first and fourth factors do not weigh in favor of imposing a duty on Maxim and that these factors are controlling.

_____

[1] Again, an appellate court's examination is limited to the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. **Weiley, supra.**

Considering the first factor, there is little, if any, relationship between Maxim and Appellants. According to the complaint, Maxim is an agency that specializes in placing temporary and permanent personnel in healthcare jobs and placed Kwiatkowski with UPMC. The complaint does not allege UPMC apprised Maxim of Kwiatkowski's drug diversion or that Maxim placed Kwiatkowski in any other facility after UPMC terminated his employment. Thus, there is really no relationship between this agency and Kwiatkowski's victims, who were infected in another state, years after Maxim placed Kwiatkowski at UPMC.

Further, upon examination of the fourth *Althaus* factor, it would be a significant burden on agencies that place employees in healthcare jobs to require that they follow up on the reasons for termination of each employee from each position. Moreover, the gain to be realized from imposing the burden is questionable, because there is no statute that requires agencies such as Maxim to take any action if they discover a former, placed employee has been diverting drugs.

Although it may benefit society if all employers were required to follow up on employees they had placed in any establishment to see if they were diverting drugs and report them to drug enforcement agencies, our statutory framework currently imposes no such burden. Considering Maxim's relationship with Appellants, or the lack thereof, and the burden the imposition of this duty would create, without quantifiable benefit, I do not

- 10 -

find the **Althaus** factors weigh in favor of imposing a duty on Maxim.  I believe the trial court properly granted Maxim's preliminary objections, and would affirm the order as it relates to Maxim.

I also disagree with the majority's determination that Appellants failed to allege facts to support their claim for negligence *per se* against UPMC.

> The concept of negligence *per se* establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm. However, a plaintiff, having proven negligence *per se* cannot recover unless it can be proven that such negligence was the proximate cause of the injury suffered.
>
> *         *         *
>
> In order to prove a claim based on negligence *per se,* the following four requirements must be met:
>
> > (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
> >
> > (2) The statute or regulation must clearly apply to the conduct of the defendant;
> >
> > (3) The defendant must violate the statute or regulation;
> >
> > (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

**Schemberg v. Smicherko**, 85 A.3d 1071, 1074 (Pa.Super.2014) (quoting **Mahan v. Am–Gard, Inc.,** 841 A.2d 1052, 1058–1059 (Pa.Super.2003)) (citations and quotations omitted).

Appellants allege UPMC violated the following statute:

**§ 1301.76 Other security controls for practitioners.**

- 11 -

(a) The registrant shall not employ, as an agent or employee who has access to controlled substances, any person who has been convicted of a felony offense relating to controlled substances or who, at any time, had an application for registration with the DEA denied, had a DEA registration revoked or has surrendered a DEA registration for cause. For purposes of this subsection, the term "for cause" means a surrender in lieu of, or as a consequence of, any federal or state administrative, civil or criminal action resulting from an investigation of the individual's handling of controlled substances.

(b) The registrant shall notify the Field Division Office of the Administration in his area, in writing, of the theft or significant loss of any controlled substances within one business day of discovery of such loss or theft. The registrant shall also complete, and submit to the Field Division Office in his area, DEA Form 106 regarding the loss or theft. When determining whether a loss is significant, a registrant should consider, among others, the following factors:

(1) The actual quantity of controlled substances lost in relation to the type of business;

(2) The specific controlled substances lost;

(3) Whether the loss of the controlled substances can be associated with access to those controlled substances by specific individuals, or whether the loss can be attributed to unique activities that may take place involving the controlled substances;

(4) A pattern of losses over a specific time period, whether the losses appear to be random, and the results of efforts taken to resolve the losses; and, if known,

(5) Whether the specific controlled substances are likely candidates for diversion;

(6) Local trends and other indicators of the diversion potential of the missing controlled substance.

21 C.F.R. § 1301.76.

I agree with the majority's determination that Appellants' complaint sufficiently pled that, as a registrant under the act, UPMC was required to report to the DEA Kwiatkowski's known diversion and substitution of controlled substances, and that its failure to do so resulted in harm to Appellants. I disagree, however, with the majority's conclusion that the statute was designed to protect the public at large, and not to protect a particular group to which Appellants belonged.

Here, the statute governed the behavior of registrants. It forbade them from hiring employees who had been convicted of a felony offense related to controlled substances, and required them to report the theft of controlled substances within one business day. Thus, it seems the statute was designed, at least in part, to protect patients of registrants from employees who divert drugs or who are likely to do so. Appellants were patients of registrants. Therefore, I think Appellants successfully pled a cause of action in negligence *per se* against UPMC, and I would vacate the trial court's order as it pertained to that claim.

Accordingly, I dissent.