Mark R. FOSTER, Ph.D., M.D., Appellant

v.

UPMC SOUTH SIDE HOSPITAL, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 2, 2009.

Filed Aug. 6, 2010.

---

Michael A. Cassidy, Pittsburgh, for appellant.

Howard A. Chajson, Pittsburgh, for appellee.

BEFORE: MUSMANNO, BENDER, and BOWES, JJ.

OPINION BY BOWES, J.:

Dr. Mark R. Foster appeals from the November 20, 2008 order granting summary judgment to Appellee, UPMC South Side Hospital. We affirm.

Appellant was an orthopedic surgeon with privileges at UPMC South Side Hospital ("UPMC"). On September 15, 2005, he was summarily suspended by UPMC after performing surgery on the wrong side of a patient. This error was one of several surgical missteps committed by Appellant within two months. Under the Medical Staff Bylaws of UPMC (the "bylaws"), a physician whose medical staff privileges have been suspended may seek a hearing before a Medical Staff Appeal Hearing Committee ("the committee"). After Appellant requested a committee hearing, five physicians, including specialists in orthopedics, internal medicine, emergency medicine, anesthesia, and cardiology, were appointed to serve on the committee.

The committee conducted a hearing on October 19, 2005, and received the following evidence. First, Appellant performed surgery on the left side of patient D.M., who was scheduled to receive a right-sided sacroiliac fusion. Second, Appellant performed a total hip replacement on patient L.D., but failed to conduct the appropriate post-operative x-rays of the patient. Third, Appellant performed surgery on patient A.G.'s feet. In doing so, Appellant inadvertently cut the third metatarsal rather than the fourth metatarsal, as substantiated by operative notes. This complication was readily avoidable through the use of imaging techniques, which Appellant admitted should have been utilized for the operation in question. Lastly, Appellant conducted spinal surgery on a fifty-three-year-old woman, who returned to the operating room three days later for drainage of a neck abscess, tracheostomy, esophagoscopy, and bronchoscopy. It was discovered that the patient had a perforated esophagus, a known risk of the spinal surgery Appellant performed. Appellant's care was substandard because he failed to recognize the complication and undertake appropriate remedial measures, causing unnecessary complications in the woman. The committee also was offered evidence that Appellant's complication rates were higher than those of his peers.

On October 31, 2005, the committee issued a decision affirming Appellant's suspension. Appellant was informed that he had the right to an appeal before the Board of Directors of UPMC, as provided by the bylaws. Appellant availed himself of the review process, which transpired on January 18, 2006. That board affirmed the decision on February 17, 2006 stating, "Considering the totality of information in this matter, the Board determines unanimously, per its review standard set forth in UPMC South Side Medical Staff Bylaws Section 9.6F[,] that the unanimous decision of the Medical Staff Appeal Hearing Committee was justifiable, supported by substantial evidence with full competent consideration to multiple viewpoints and was not in any way arbitrary or capricious." Amended Complaint at Exhibit K.

On March 14, 2006, Appellant instituted this action against UPMC. After preliminary objections were sustained to various counts in the complaint, the trial court entered the final, summary judgment order from which Appellant filed the present appeal. Appellant raises these challenges to the trial court proceedings:

1. Whether summary judgment was improperly granted where UPMC South Side was not entitled to immunity under the Health Care Quality Improvement Act because it failed to provide Dr. Foster with adequate and fair hearing procedures before the Hearing Committee?

2. Whether preliminary objections were improperly sustained with respect to Dr. Foster's defamation

claim against Dr. Kang where all of the elements of such a claim were properly pled?

3. Whether preliminary objections were improperly sustained with respect to Dr. Foster's defamation claim against Mr. Kidwell where all of the elements of such a claim were properly pled?

4. Whether preliminary objections were improperly sustained with respect to Dr. Foster's claim for intentional interference with contractual relations where all of the elements of such a claim were properly pled?

Appellant's brief at 5.

We first examine the grant of summary judgment as to Appellant's breach of contract claims.

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record

in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*ADP, Inc. v. Morrow Motors Inc.,* 969 A.2d 1244, 1246 (Pa.Super.2009) (quoting *Shepard v. Temple University,* 948 A.2d 852, 856 (Pa.Super.2008)).

██ Herein, the trial court granted summary judgment on Appellant's breach of contract claims based upon application of the immunity granted to UPMC under the Health Care Quality Improvement Act of 1986 ("the Act"), 42 U.S.C. §§ 11101, *et seq.* The Act bars recovery of monetary damages for claims arising from a peer review process. *Manzetti v. Mercy Hospital of Pittsburgh,* 565 Pa. 471, 776 A.2d 938, 942 (2001). Appellant concedes that the Act confers immunity upon UPMC for any breach of contract action due to his suspension with the *caveat* that UPMC's conduct must have conformed to the parameters of 42 U.S.C. § 11112(a). *See* Appellant's brief at 14.

The [Act] was created by the United States Congress in order "to improve the quality of medical care by encouraging physicians to identify and discipline other physicians who are incompetent or who engage in unprofessional behavior." H.R.Rep. No. 903, 99th Cong., 2d Sess. (1986), 1986 U.S.C.C.A.N. 6384. In order to further the candor necessary to such a process, the Congress inserted immunity provisions in the [Act]. These provisions provide that anyone participating in or aiding a professional review body shall not be held liable in monetary damages for claims arising out of the peer review process. 42 U.S.C. § 11111(a)(1). In order to qualify for this immunity,

a professional review action must be taken-

(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

42 U.S.C. § 11112(a).

*Manzetti, supra* at 945.

In the present case, Appellant challenges the application of § 11112(a) based upon UPMC's failure to fulfill subpart three of subsection (a) and suggests that he did not receive an adequate and fair hearing. Section 11112 delineates the requirements for an adequate hearing. It provides, in pertinent part, that the physician who is subject to the peer review committee proceeding must have the right to call, examine, and "cross-examine" witnesses. 42 U.S.C. § 11112(b)(3)(C)(iii).

■ Herein, Appellant maintains that UPMC is not entitled to immunity under the Act solely because Appellant was not able to cross-examine Dr. James Kang. The relevant facts follow. Dr. Kang issued an evaluative report with respect to the care Appellant rendered to one patient, and that report was introduced at the committee hearing. Five days prior to the October 19, 2005 hearing before the committee, Alexander J. Ciocca, Esquire, associate counsel for UPMC, sent an e-mail to Appellant's attorney, Michael Cassidy, Esquire. Mr. Ciocca attached the external reviewer statements, including that of Dr.

Kang, on several of Appellant's cases. Mr. Ciocca indicated that the statements would be introduced at the upcoming hearing and that Dr. Kang would not be attending the committee hearing. Mr. Ciocca invited Mr. Cassidy to let him know if there were any questions.

During discovery conducted in this matter, Mr. Cassidy was deposed. Mr. Cassidy admitted that he was aware that Dr. Kang's report would be introduced at the hearing and that Dr. Kang would not attend. Deposition of Michael Cassidy, Esquire, 8/30/07, at 50–52, 54–55. Mr. Cassidy "never raised an objection prior to the October 19 hearing," *id.* at 55, even though he was aware that Appellant had the right to cross-examine those who were going to serve as adverse witnesses. *Id.* at 55. Mr. Cassidy also failed to ask for the hearing to be rescheduled to a point in time when Dr. Kang could be present. *Id.* at 56. Mr. Cassidy explained that he did not request another hearing or tell Mr. Ciocca that he would object to the absence of Dr. Kang because he "wanted an early as possible hearing" and also "didn't want Dr. Kang to be present to testify about this case." *Id.* Mr. Cassidy never informed Mr. Ciocca that he would object because it was not Mr. Cassidy's "job to tell [Mr. Ciocca] what I'm going to object to." *Id.* at 60. Mr. Cassidy maintained that he did not have any questions, only objections; therefore, despite the fact that Mr. Ciocca requested a dialogue by asking Mr. Cassidy to inform him if Mr. Cassidy had any questions about the impending hearing, Mr. Cassidy did not inform Mr. Ciocca about his proposed plan to object to the admission of Dr. Kang's report at the hearing.

The trial court concluded that Appellant was "not deprived of the opportunity to cross-examine Dr. Kang because he never sought an opportunity to do so." Trial

Court Opinion, 11/18/08, at 8. We concur with this assessment. It is clear that Appellant was afforded the opportunity to cross-examine Dr. Kang but deliberately chose not to avail himself of it. Appellant's counsel admitted that he: 1) was aware that Dr. Kang's report would be presented to the committee; 2) knew Dr. Kang would not testify at the hearing; 3) after being aware of the operative facts, failed to communicate with opposing counsel despite being asked to do so;[1] and 4) admittedly did not want Dr. Kang present at the committee hearing. Moreover, the hearing could have been scheduled so as to allow for the introduction of Dr. Kang's live testimony rather than a report and to afford Appellant the opportunity to impeach that witness. Mr. Cassidy conceded that he did not want the hearing delayed.

Thus, the record establishes that Appellant intentionally abandoned his opportunity to cross-examine Dr. Kang and manipulated events so as to avoid the application of § 11112(a). Appellant was given a fair hearing and could have cross-examined Dr. Kang if he had elected to pursue that right. Hence, we affirm the trial court's application of the immunity provided by the Act.

■■■ We now examine the propriety of the trial court's grant of preliminary objections in the nature of a demurrer to Appellant's defamation cause of action.

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case i[s] free and clear of doubt.

*Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 966 (Pa.Super.2009) (quoting *Strausser v. PRAMCO III*, 944 A.2d 761, 764–65 (Pa.Super.2008)).

On appeal, Appellant also maintains that the trial court "erred by dismissing [Appellant's] defamation claim against Mr. Kidwell [counsel to UPMC]. Mr. Kidwell repeated Dr. Kang's defamatory statement to Ms. Hale, the Director of Corporate Risk Management for UPMC." Appellant's brief at 25. Specifically, sometime prior to August 19, 2005, Dr. Kang informed Mr. Kidwell that Appellant had "caused paralysis in some patients," when that statement

---

1. Appellant professes that Mr. Ciocca did not ask Mr. Cassidy to communicate with him. This position is disingenuous. The fact that Mr. Ciocca used a synonym for "communication," in the form of "let me know if there are any questions," does not obviate Mr. Ciocca's intent to invite a discussion if Mr. Cassidy had concerns about the proposal to use Dr. Kang's report at the impending hearing.

was false. Fourth Amended Complaint, 3/5/07, at ¶¶ 72–73. Appellant attached the defamatory communication to his complaint:

TO: Kathy Hale

FROM: Rich Kidwell

DATE: August 19, 2005

SUBJECT: Patient EB

Dr. Kang reviewed these materials for us and stated that this was a disaster and a mess. Esophageal perforation is an extremely rare complication, approximately one in 5000. Dr. F, however, should have recognized that this occurred right away based on the amount of air that was found. He must have really caused quite a perforation. It should not have taken three days to recognize and this patient could have died. Dr. Kang was very concerned with Dr. F's care here and also says that he is aware that he, Dr. F, has been taken to court several times and has caused paralysis in some patients.

*Id.* at Exhibit N. The communication is on letterhead from the UPMC Health System Corporate Legal Department.

The trial court ruled that the communication was a statement of opinion made in a peer review setting and, therefore, was not defamatory. Appellant contends that the position that he caused paralysis was a statement of fact, not opinion. He also argues that it was not part of the medical review proceedings because those proceedings did not pertain to any paralyzed patients and the communication was made a month before he was suspended on September 15, 2005. Appellant's brief at 26.

Thus, the uncontested facts are as follows. On August 19, 2005, Mr. Kidwell, while operating as UPMC's counsel, related information to Ms. Hale, Director of Corporate Risk Management for UPMC, in a memorandum. That memo indicated that Dr. Kang reviewed materials for UPMC and stated that Appellant's care of the patient who sustained the esophageal tear was "a disaster and a mess." Fourth Amended Complaint, 3/5/07, at Exhibit N. Mr. Kidwell also related to Ms. Hale that "Dr. Kang was very concerned with [Appellant's] care here," and Mr. Kidwell informed Ms. Hale that Dr. Kang was aware that Appellant had been sued "several times and has caused paralysis in some patients." *Id.* at 83, Exhibit N. Appellant averred that the statement that Appellant had caused paralysis in some patients was false, that Mr. Kidwell and Dr. Kang knew that the information about Appellant causing paralysis in a patient was incorrect or conveyed it with reckless disregard as to its veracity, that it was disseminated without a privilege, and that it caused Appellant harm.

■ We conclude that the statement in question was subject to a conditional privilege applied in this Commonwealth to communications made by employees concerning matters of discipline and termination with respect to another employee.

The Uniform Single Publication Act, 42 Pa.C.S. §§ 8341–8345, sets forth the elements of a *prima facie* case in a defamation action. The burden is on the plaintiff to prove:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a).

*Joseph v. Scranton Times L.P.,* 959 A.2d 322, 335 (Pa.Super.2008).

■ In Pennsylvania, we recognize a conditional privilege when the speaker and recipient share a common interest in the subject matter and both are entitled to know about the information. *E.g., Daywalt v. Montgomery Hospital,* 393 Pa.Super. 118, 573 A.2d 1116, 1118 (1990) ("publication is conditionally privileged if the [speaker] reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know"); *see also* Restatement (Second) of Torts § 596, which provides:

> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

■ This privilege is applicable when an employer's workers communicate with each other in connection with the discipline, including termination, of a fellow employee. The workers relaying the purportedly defamatory information must be involved in the disciplinary matter at hand. *See Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 612 A.2d 500, 507 (1992) (citing *Sobel v. Wingard,* 366 Pa.Super. 482, 531 A.2d 520 (1987)) (Pennsylvania law recognizes existence of privilege in connection with communications concerning employment termination); *Miketic v. Baron,* 450 Pa.Super. 91, 675 A.2d 324, 329–30 (1996) (quoting, *inter alia, Daywalt, supra* at 1118 (conditional privilege "applies to private communications among employers regarding discharge and discipline")); *see also Maier v. Maretti,* 448 Pa.Super. 276, 671 A.2d 701

(1995); Restatement (Second) of Torts § 596, comments c, d.

In the present case, as noted, Appellant avers that the privilege was inapplicable because the remark was made one month before his suspension. Nevertheless, the statement was conveyed during the time frame that was pertinent to the suspension of Appellant's privileges. While he was suspended one month after the communication in question, that action was taken based upon missteps that occurred during the previous two months. Dr. Kang's representation was disseminated to a risk-management employee of UPMC during the period that Appellant was committing the errors that resulted in his suspension from that organization. The staff member who received Dr. Kang's information relayed it to a supervisor in the risk management group. Dr. Kang subsequently was utilized in connection with the peer review process. Furthermore, the communication regarding paralysis in patients was contained in a document that also specifically discussed one of the cases that was pertinent to Appellant's suspension, the patient who sustained an esophageal tear.

■ Thus, the communication was made among the employer's workers who were connected to the issue of whether Appellant's patient care was appropriate, it concerned an evaluation of Appellant's job performance, it occurred during the period that the problems resulting in Appellant's suspension surfaced, and the communication also specifically involved one of the cases relevant to Appellant's suspension. Hence, the uncontested facts reveal that the conditional privilege applied. As noted, Appellant asserted in his complaint that the statement was not privileged. However, we are not required to accept as true Appellant's legal averment that the statement was not subject to a privilege. *Insurance Adjustment Bureau, Inc. v. All-*

*state Ins. Co.*, 588 Pa. 470, 905 A.2d 462, 468 (2006) ("In determining the merits of a demurrer, all well-pleaded, material facts set forth in the complaint and all inferences fairly deducible from those facts are considered admitted and are accepted by the trial court as true; conclusions of law are neither deemed admitted nor deemed true.").

 Once a conditional privilege applies, a plaintiff's defamation cause of action can survive only if the privilege was abused. *Moore v. Cobb–Nettleton*, 889 A.2d 1262 (Pa.Super.2005).

Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Id.* at 1269.

Appellant's complaint contains no allegations regarding abuse of privilege, *see* Fourth Amended Complaint, 3/5/07, at ¶¶ 71–94, which is fatal to the viability of his cause of action. *Miketic, supra* (defamation claim properly dismissed where plaintiff failed to allege specific facts in his complaint to support abuse of conditional privilege applicable to matters involving employee discharge and discipline). We therefore uphold the trial court's decision to dismiss the defamation cause of action.

 Finally, Appellant assails the trial court's grant of the demurrer as to his counts of intentional interference with existing and prospective contractual relationships.

The requisite elements of a cause of action for interference with prospective contractual relations are as follows:

(1) a prospective contractual relationship;

(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual damage resulting from the defendant's conduct.

*Phillips v. Selig*, 959 A.2d 420, 428 (Pa.Super.2008) (quoting Restatement (Second) of Torts § 766B). "Defining a 'prospective contractual relationship' can be difficult. As our Supreme Court has commented, 'to a certain extent, the term has an evasive quality, eluding precise definition. It is something less than a contractual right, something more than a mere hope.'" *Phillips* at 428 (quoting in part *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979)). "[A]nything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. There must be something more than a mere hope or the innate optimism of the salesman." *Phillips* at 428 (quoting *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895, 898–99 (1971)).

 A cause of action for intentional interference with existing contractual relationships is outlined in Restatement (Second) of Torts § 766. As we noted in *Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 97–98 (Pa.Super.2009) (citations omitted), *appeal granted*, —— Pa. ——, 990 A.2d 724 (2010):

The necessary elements of the cause of action are (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on

the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

The third element contains the requirement that the plaintiff allege the absence of privilege or justification. This requirement mandates that the plaintiff provide proof that the defendant's actions were improper. *Id.*

■ At the outset, we note that in Pennsylvania, sufficient factual averments must be pleaded in a complaint to sustain a cause of action. "Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." *Lerner v. Lerner,* 954 A.2d 1229, 1235 (Pa.Super.2008).

■ We now examine whether Appellant's complaint sufficiently set forth the first element of the two causes of action: an existing contract or a prospective contract. The sole allegation leveled regarding the existence of extant or potential contractual relationships is as follows:

> By wrongfully suspending his privileges as set forth above, and by making various false and defamatory statements about [Appellant] to the National Practitioners Databank, UPMC Presbyterian Shadyside Hospital, UPMC Health Plan, Highmark Blue Cross/Blue Shield, and Tri–Century Insurance Company, UPMC South Side has interfered with [Appellant's] existing and prospective contractual relations.

Fourth Amended Complaint, 3/5/07, at ¶ 49. This is the extent of the information pled as to the contacts. Significantly, this paragraph fails to even delineate between which contractual relationships were existing and which were prospective. No dates or specifics are listed regarding existing contracts. Additionally, no facts are set forth to support an inference that there was a reasonable probability that Appellant would enter a contract with any of the named entities. This paragraph is wholly deficient because it does not provide a scintilla of information regarding the purported contractual relationships.

■ We now examine the sufficiency of the averments regarding UPMC's interference with these relationships. As noted, Appellant complained that the interference consisted of UPMC's wrongful suspension of his privileges and dissemination of false information about his patient. We have ruled that Appellant's privileges were not wrongfully terminated by UPMC; thus, that action, as a matter of law, served a legitimate purpose of UPMC and was privileged. Appellant is left with one basis for his position that Appellant improperly interfered with his contractual relationships, that being that UPMC disseminated statements that misrepresented the gravity of the outcomes in the cases that led to termination of his staff privileges.

While Appellant set forth statements that were purportedly made by UPMC, he failed to plead who made the statements and to whom the statements were made, rendering his complaint fatally vague in that respect. *See Jaindl v. Mohr,* 432 Pa.Super. 220, 637 A.2d 1353 (1994), *aff'd,* 541 Pa. 163, 661 A.2d 1362 (1995) (slander cause of action cannot be supported unless complaint sets forth exactly who made statement and exactly to whom statement was made); *Gross v. United Engineers & Constructors, Inc.,* 224 Pa.Super. 233, 302 A.2d 370 (1973) (same).

■ Finally, we examine the sufficiency of Appellant's complaint with respect to the interconnected intent and privilege elements of the causes of action for interference with prospective and existing contracts. In this connection, Appellant again made conclusive averments. He claimed: "UPMC South Side's actions were intentional, malicious and designed to harm [Appellant's] existing and prospective contractual relations" and that "UPMC South Side was not privileged to interfere with [Appellant's] existing and prospective contractual relations." Fourth Amended Complaint, 3/5/07, at ¶¶ 53, 54. That is the extent of his factual assertions with respect to these components of the causes of action.

Meanwhile, the complaint establishes that UPMC was merely transmitting the outcome of Appellant's review by the committee to other UPMC affiliates, Appellant's insurer, a medical insurer, and a national practitioners' data bank. Even if UPMC somehow exaggerated the deficiencies in Appellant's performance that led to that suspension, insufficient facts were contained in the complaint to support a finding that UPMC's actions were done solely with malice toward Appellant rather than for its own legitimate business purposes of revealing that Appellant no longer enjoyed a business relationship with it. *See Thompson Coal Co., supra* (plaintiff failed to plead sufficient facts to establish defendant's unlawful intent where defendant acted to advance his own interests).

Appellant was offered three chances to amend his complaint. Despite ample opportunity to substantiate his causes of action for intentional interference with present and prospective contractual relationships, his fourth complaint nevertheless continues to make vague assertions that unidentified persons from UPMC made false statements misrepresenting the severity of his treatment deficiencies to other unnamed persons at companies and that those statements interfered with unspecified prospective and existing contracts with those companies. Thus, the trial court's grant of a demurrer on these counts must be sustained.

Order affirmed.