J-A13011-16

2016 PA Super 244

| | |
|---|---|
| SALSGIVER COMMUNICATIONS, INC., SALSGIVER TELECOM, INC., AND SALSGIVER, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| CONSOLIDATED COMMUNICATIONS HOLDINGS, INC., NORTH PITTSBURGH SYSTEMS, INC., AND NORTH PITTSBURGH TELEPHONE COMPANY, INC., | |
| Appellees | No. 946 WDA 2015 |

Appeal from the Judgment Entered June 2, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): G.D. 08-007616

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.:

OPINION BY OLSON, J.:                    **FILED NOVEMBER 10, 2016**

Appellants, Salsgiver Communications, Inc., Salsgiver Telecom, Inc., and Salsgiver, Inc., appeal from the June 2, 2015 judgment entered in favor of defendants, Consolidated Communications Holdings, Inc., North Pittsburgh Systems, Inc., and North Pittsburgh Telephone Company, Inc. (collectively "Defendants").  We affirm.

On April 14, 2008, Appellants instituted the current action against Defendants.  Appellants' amended complaint sounded in trespass and alleged that Defendants tortiously interfered with their existing and prospective contractual relations.

Within Appellants' amended complaint, Appellants averred that Salsgiver Communications, Inc. ("Salsgiver Communications") and Salsgiver Telecom, Inc. ("Salsgiver Telecom") are wholly-owned subsidiaries of Salsgiver, Inc. Appellants claimed that, under the Federal Telecommunications Act of 1996, 47 U.S.C. §§ 151 *et seq.* ("the Act"), Salsgiver Communications is a "cable television system operator" and Salsgiver Telecom is a "telecommunications carrier." Appellants' Amended Complaint, 8/4/08, at ¶¶ 1-4. Defendants own and maintain utility poles in Western Pennsylvania. *Id.* at ¶ 6.

According to Appellants, they "can provide [their cable television and telecommunication] services to customers only by way of fiber optic cable[,] which must be attached to utility poles *en route* to their destination." *Id.* at ¶ 9. In addition, under "[t]he Pole Attachment Section of the [Act] (47 U.S.C. § 224)[,] cable television system operators, like Salsgiver Communications, and telecommunications carriers, like Salsgiver Telecom, must be granted access to those [utility] poles by utilities in their service areas, such as [Defendants], which own the poles."[1] *Id.*

_____

[1] Section 224(f)(1) of the Act declares:

> A utility shall provide a cable television system or any telecommunications carrier with nondiscriminatory access to any pole, duct, conduit, or right-of-way owned or controlled by it.

47 U.S.C. § 224(f)(1).

- 2 -

Appellants averred that, in September 2004, "Salsgiver Communications entered into its first cable franchise agreement with a municipality, the Borough of Freeport, Armstrong County." *Id.* at ¶ 17A. Under the agreement with Freeport, Salsgiver Communications is obliged to provide "cable television programming and other cable services" to Freeport, for a period of at least 50 years. *Id.* at ¶ 22D.

As Appellants alleged, the cable franchise agreement with Freeport "entitled Salsgiver Communications to pole access as a 'cable television system' under § 224 of the Act."[2] *Id.* at ¶ 17A. Therefore, in October 2004, Salsgiver Communications "formally requested, in writing, access to the telephone poles owned by Defendants," so that Salsgiver Communications could provide cable television services to its existing and prospective customers. *Id.* at ¶ 11. Nevertheless, Appellants claimed:

> knowing that such conduct would harm Salsgiver Communications' existing and prospective contractual relations with its customers, . . . [Defendants] repeatedly refused to allow Salsgiver Communications to attach to its poles, despite the fact that Salsgiver Communications also entered into cable franchise agreements with Buffalo Township on December 31, 2004[] and with Harrison Township on April 26, 2006.

*Id.* at ¶ 17C.

_____

[2] On November 26, 2007, the Federal Communications Commission ("FCC") declared that Salsgiver Communications was a "cable television system" under the Act. Appellants' Amended Complaint, 8/4/08, at ¶ 20.

Appellants alleged that Defendants' actions were intentional and harmed Salsgiver Communications' reputation, as well as "Salsgiver Communications' existing and prospective contractual relations with its customers." *Id.* at ¶¶ 17C and 23.

Appellants also claimed that, in 2005, "the Pennsylvania Public Utilities Commission [] provisionally approved Salsgiver Telecom's application to provide telecommunications services" in Pennsylvania. *Id.* at ¶ 28A. The approval "entitle[d] Salsgiver Telecom to pole access as a ['Competitive Access Provider'] under § 224 of the Act."[3] *Id.* at ¶ 28A. Therefore, in October 2005, Salsgiver Telecom requested, in writing, access to the telephone poles owned by Defendants, so that Salsgiver Telecom could provide telephone services to its existing and prospective customers. *Id.* at ¶ 12. However, Defendants "repeatedly refused to allow Salsgiver Telecom to attach to their poles." *Id.* at ¶ 28C. Appellants alleged that Defendants' "willful, intentional[,] and negligent behavior" tortiously caused harm to Salsgiver Telecom's reputation and caused Salsgiver Telecom to lose potential profits. *Id.* at ¶ 31.

Prior to trial, Defendants filed a motion for summary judgment and claimed, amongst other things, that the two-year statute of limitations

---

[3] On May 23, 2007, the FCC declared that Salsgiver Telecom was a "telecommunications carrier" under the Act. Appellants' Amended Complaint, 8/4/08, at ¶ 30.

barred Appellants' claims. Defendants' Motion for Summary Judgment, 6/18/12, at ¶ 15. On February 12, 2013, the trial court entered an order partially granting Defendants' summary judgment motion and declaring that "the two-year statute of limitations bars [Appellants'] claims [] for alleged tortious conduct occurring prior to April 14, 2006." Trial Court Opinion, 2/12/13, at 3; Trial Court Order, 2/12/13, at 1.

The case proceeded to a jury trial and, during trial, Defendants introduced evidence that they did not allow Appellants utility pole access because Defendants' attorneys concluded that Appellants were neither a "cable television system operator" nor a "telecommunications carrier," as defined under the Act. N.T. Deposition of Kevin Albaugh, 5/1/15, at 6 and 16 (introduced into evidence on May 8, 2015). Therefore, according to the Defendants, they believed that Appellants were ineligible to receive utility pole attachments. *Id.* at 11.

The evidentiary portion of the trial concluded on May 13, 2015. The next morning, the trial court heard argument on the parties' proposed jury instructions.[4] As is relevant to the current appeal, during argument, Appellants objected to two proposed jury instructions that were proffered by Defendants. First, Appellants objected to Defendants' proposed instruction

---

[4] Defendants' proposed jury instructions are attached to the certified record; however, Appellants' proposed jury instructions are not included in the certified record.

that Defendants "cannot be liable to [Appellants] for interference with a prospective contract if [the jury finds] that the Defendants, in good faith, were asserting a legally protected interest of their own."  ***See*** Defendants' Proposed Jury Instructions, 5/13/15, at 9; N.T. Trial, 5/14/15, at 687-689.  According to Appellants, this instruction was improper because Pennsylvania case law "does not . . . encompass any explicit good faith test in the context of intentional interference with contractual relations" and because "the term 'legally protected interest' is kind of confusing to the jury."  N.T. Trial, 5/14/15, at 688-689.  The trial court agreed that the term "legally protected interest" was confusing and thus "knock[ed] out" that part of the instruction.  ***Id.*** at 690.  However, the trial court declared that it would instruct the jury on "good faith."  ***Id.***

Second, Appellants objected to Defendants' proposed jury instruction regarding "mitigation of damages."  ***Id.*** at 691.  According to Appellants, "there was not much testimony at all" about how Appellants could have mitigated their damages in this case and "the jury [would] really [have] no context within which to view [the mitigation] instruction."  ***Id.*** at 692.  The trial court disagreed with Appellants, holding that it was "up to the determination of the jury [] to determine whether or not there was mitigation and whether or not [Appellants] did it and whether or not it was reasonable."  ***Id.*** at 699.

The trial court then instructed the jury on the tort of intentional interference with prospective contractual relations[5] in the following manner:

> One who intentionally induces or otherwise intentionally prevents another from entering into a prospective business relationship with a third person or makes the entry into that business relationship more expensive is responsible for the loss that person or company suffered as a result of the prevention or interference with such prospective business relationship.
>
> In order to succeed on this claim for tortious interference with prospective business relations, the Plaintiff must prove by a preponderance of the evidence, [number one,] the existence of a prospective contractual or business relation between the Plaintiffs and a third party; [number two], purposeful action on the part of the Defendants intended to interfere with or prevent the prospective relation from occurring; [number three], the absence of privilege or justification on the part of the Defendants; and [number four], the occasioning of actual legal damage as a result of the Defendants' conduct.
>
> These items are called the elements of Plaintiffs' claim. The term "prospective business relationship" includes any prospective relationship leading to potentially profitable contracts. A prospective relationship is less than a contractual right, but more than a mere hope.
>
> Plaintiffs must have had a realistic expectation that they would have entered into a contractual relationship with residential and business customers purchasing Plaintiffs' services.
>
> The tort of intentional interference with prospective business relations requires Plaintiffs to prove by a fair

_____

[5] The trial court did not instruct the jury on intentional interference with existing contractual relations.

preponderance of the evidence that the interference was intentional and improper.

The term "intent" or "intentional" is not limited to consequences which are desired. If the actor knows that the consequences are certain or substantially certain to result from his act and still goes ahead, he is treated by the law as if he had, in fact, desired to produce the result.

If the Defendants did not have that intent, that conduct does not subject them to liability to the Plaintiffs. If the Defendants' conduct was for a purpose other than interference with the Plaintiffs' prospective contractual relations, you may take that into consideration in your determination of whether the Defendants intended any interference.

Intent to interfere does not require proof of ill will towards the Plaintiffs. Defendants may be liable even if they act with no desire to harm the Plaintiffs.

With respect to the propriety of Defendants' conduct, it is up to you to determine . . . whether the conduct of the Defendants was improper in connection with those items complained of by the Plaintiffs.

In order to determine whether the Defendants' conduct is improper, you should consider the following factors: [number one], the nature of Defendants' conduct; [number two], the Defendants' motive; [number three], the interest of the Plaintiff with which the Defendants' conduct allegedly interfered; [number four], the interest of the Defendants which they sought to advance by their conduct and whether Defendants advanced it in good faith, the social interest in protecting the freedom of action of the Defendants, the contractual interest of the Plaintiffs, the proximity or remoteness of the Defendants' conduct of the interference and the relationship between the parties in question.

You may consider society's interest in protecting business competition as well as its interest in protecting the individual against interference with his or her pursuance of gains.

*Id.* at 786-789.

With respect to mitigation of damages, the trial court instructed the jury:

> The law requires a person who is injured by another to take all reasonable steps to minimize the damages. The Defendants have the burden of proving that the Plaintiffs failed to act to take such steps and that some damages could have been avoided.

*Id.* at 792.

Before the jury retired, Appellants "renew[ed] the same [exceptions they made] in chambers beforehand" and the trial court declared: "Okay. That's on the record. Okay. Exceptions noted." *Id.* at 795.

On May 14, 2015, the jury rendered its verdict: it found that Defendants did not "intentionally interfere[] with [Appellants'] contractual relations or prospective contractual relations." *Id.* at 805. The verdict was entered on May 15, 2015 and, after the trial court denied Appellants' timely post-trial motion,[6] Appellants filed a timely notice of appeal to this Court. Appellants raise two issues on appeal:

> [1.] Whether the trial court erred when it instructed the jury that it could consider, in connection with the propriety of Defendants' conduct in a tortious interference with business relations case, whether Defendants acted in good faith?

_____

[6] Appellants filed their post-trial motion on Tuesday, May 26, 2015. The motion was timely because Monday, May 25, 2015 was Memorial Day.

[2.] Whether the trial court erred in instructing the jury on mitigation of damages?

Appellants' Brief at 4 (some internal capitalization omitted).

Our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. *Pringle v. Rapaport*, 980 A.2d 159, 165 (Pa. Super. 2009) (citation omitted). "It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse[,] rather than clarify a material issue[,] that error in a charge will be found to be a sufficient basis for the award of a new trial." *Id.* (quotation and citation omitted); *Commonwealth v. Chambers*, 980 A.2d 35, 49-50 (Pa. 2009) ("[a] charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error"). Further:

> [i]n reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

*Reilly by Reilly v. S.E. Pa. Transp. Auth.*, 489 A.2d 1291, 1305 (Pa. 1985).

Appellants claim that the trial court erred "when it instructed the jury that it could consider, in connection with the propriety of Defendants' conduct . . . , whether Defendants acted in good faith." Appellants' Brief at

12 (some internal capitalization omitted). According to Appellants, the instruction was erroneous because Pennsylvania does not recognize a good faith "defense" to tortious interference with prospective contractual relations.[7] *Id.* This claim fails.

At the outset, the trial court did not instruct the jury that there was a good faith "defense" to the tort of intentional interference with prospective contractual relations. Rather, the trial court instructed the jury that **one of the eight factors** that the jury should consider "**to determine whether the Defendants' conduct [was] improper**" was "the interest of the Defendants which they sought to advance by their conduct and whether Defendants advanced it in good faith." N.T. Trial, 5/14/15, at 788-789. Further, as will be explained below, the impropriety of Defendants' interference was an **element** of Appellants' cause of action. *See Empire*

_____

[7] Within Appellants' brief to this Court, Appellants also argue that the trial court's "good faith" instruction was confusing and that the trial court "should have [] limited [its instruction] to the clear elements of the cause of action." Appellants' Brief at 14-15. Appellants did not levy this specific objection at trial. Indeed, to the extent Appellants claimed any portion of the charge was confusing, Appellants' argument at the charging conference was limited to the claim that "the term 'legally protected interest' [was] kind of confusing to the jury." N.T. Trial, 5/14/15, at 688-689. Moreover, during the charging conference, the trial court sustained that specific objection and, during its charge, the trial court did not instruct the jury on the term "legally protected interest." *Id.* at 690. Therefore, Appellants' current claim regarding the trial court's "confusing" good faith instruction is waived. *Takes v. Metro. Edison Co.*, 695 A.2d 397, 399-400 (Pa. 1997) (holding that the failure "to timely and specifically object to [an allegedly] erroneous [jury] charge" waives the issue on appeal).

***Trucking Co. v. Reading Anthracite Coal Co.***, 71 A.3d 923 (Pa. Super. 2013) ("[t]hus, in order to succeed in a cause of action for tortious interference with a contract, a plaintiff must prove not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper"); ***see also*** N.T. Trial, 5/14/15, at 787 ("[t]he tort of intentional interference with prospective business relations requires Plaintiffs to prove by a fair preponderance of the evidence that the interference was intentional and improper").

The trial court thus instructed the jury to determine whether Defendants' alleged interference was "improper" and to do so by engaging in a multi-factor balancing test. The court further instructed the jury that one of the factors they should consider and balance was "the interest of the Defendants which they sought to advance by their conduct and whether Defendants advanced it in good faith." N.T. Trial, 5/14/15, at 788-789. As such, Appellants' characterization of the trial court's instruction in this case is simply incorrect. The trial court did not instruct the jury that there was a good faith defense to the tort. Instead, the challenged instruction involved one part of one factor of a multi-factor balancing test that the jury had to consider and weigh (with the other factors), to determine whether Appellants satisfied their burden of persuasion concerning an element of their cause of action.

Moreover, the trial court's instruction on the issue was consistent with Pennsylvania law.

The tort of intentional interference with existing or prospective contractual relations seeks a balance between "two fundamental principles underlying the American legal and economic systems:"

> On the one hand, the fundamental premise of capitalism is that all market participants should be free to pursue their economic self-interest (which will, in turn, create the greatest macroeconomic benefit to all participants) without interference from excessive government regulation. On the other hand, the American legal system enforces stability of contract, protects against wrongful predatory conduct, and thereby encourages economic investment and growth. These competing principles conflict when self-interested or competitive conduct is perceived as unfair, crossing the line into tortious interference with another's contracts or economic expectancies.

Kevin M. Shelley & David W. Oppenheim, *When Conflicting Principles Collide: The Uncharted Boundary Between Fair Competition and Tortious Conduct*, 22 FRANCHISE L.J. 184, 184-185 (2003).

Thus, although the American economic and legal systems place tremendous value upon, and seek to safeguard, a person's right to "compete or protect his business interests in a fair and lawful manner," the tort of interference with contractual relations "draws a line beyond which an individual may not go in intentionally interfering with the business affairs of others." Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, THE AMERICAN LAW OF TORTS, § 31.38 (1991); *see also Walnut Street Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 475 (Pa. 2011) ("[o]urs is a free society where citizens may freely interact and exchange information. Tortious interference, as a basis for civil liability, does not operate to burden

such interactions, but rather, to attach a reasonable consequence when the defendant's intentional interference was 'improper'").

This Court has declared:

> The requisite elements of a cause of action for interference with prospective contractual relations are as follows:
>
> (1) a prospective contractual relationship;
>
> (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual damage resulting from the defendant's conduct.

***Foster v. UPMC South Side Hosp.***, 2 A.3d 655, 665 (Pa. Super. 2010)

(internal quotations and citations omitted).[8]

---

[8] As noted, this Court in ***Foster*** defined the tort of interference with prospective contractual relations as requiring "the absence of privilege or justification on the part of the defendant." ***Foster***, 2 A.3d at 665. All of the precedent we found declares that "the absence of privilege or justification on the part of the defendant" is an element of the tort of interference with prospective contractual relations. However, the phrase is antiquated and does not align with the Second Restatement of Torts.

Pennsylvania recognized the tort of interference with prospective contractual relations since at least the time of the First Restatement of Torts. ***See Glenn v. Point Park Coll.***, 272 A.2d 895, 897 (Pa. 1971). The First Restatement defined the torts of interference with existing and prospective contractual relations in one section – Section 766. The torts were defined, in relevant part, as follows:

> . . . one who, **without a privilege** to do so, induces or otherwise purposely causes a third person not to

*(Footnote Continued Next Page)*

*(Footnote Continued)* —————

(a) perform a contract with another, or

(b) enter into or continue a business relation with another

is liable to the other for the harm caused thereby.

Restatement (First) of Torts § 766 (emphasis added).

The Pennsylvania Supreme Court adopted Section 766 of the First Restatement and held that, to plead a *prima facie* case for interference with prospective contractual relations, a plaintiff must plead: "(1) a prospective contractual relation between [the third party] and plaintiff[], (2) the purpose or intent to harm plaintiff by preventing the relationship from occurring, (3) **the absence of privilege or justification on the part of the [defendant**], and (4) the occurrence of actual harm or damage to plaintiff as a result of the [defendant's] conduct." ***Glenn***, 272 A.2d at 898 (emphasis added); ***see also Thompson Coal Co. v. Pike Coal Co.***, 412 A.2d 466, 471 (Pa. 1979).

However, courts around the country had difficulty applying the element of "absence of privilege or justification." ***See*** Restatement (Second) of Torts at Introductory Note to Chapter 37. Specifically, courts diverged on the issue of whether the plaintiff or the defendant had the burden of pleading and proving "the absence of privilege or justification" and courts had difficulty defining the term "justification." ***Id.***[Subnote.A]

Subnote.A: The Pennsylvania Supreme Court held that the plaintiff had the burden of pleading and proving "the absence of privilege or justification" on the part of the defendant. ***See Glenn***, 272 A.2d at 900 (holding that the plaintiff failed to plead a *prima facie* case because "the complaint as presently drafted does not negate the existence of privilege on the part of defendant"); ***see also Gresh v. Potter McCune Co.***, 344 A.2d 540, 542 (Pa. Super. 1975) ("[t]he presence of a privilege is not an affirmative defense, rather the absence of such a privilege is an element of the cause of action which must be pleaded and proved by the plaintiff") (internal citations and quotations omitted); ***see also Birl v. Phila. Electric Co.***, 167 A.2d 472, 474 (Pa. 1960) (the plaintiff must plead that the defendant's act is "unprivileged").

*(Footnote Continued Next Page)*

*(Footnote Continued)* ————————————————

Therefore, in 1979, the American Law Institute propounded the Second Restatement of Torts and defined the tort in terms of an "**improper**" interference. *See* Restatement (Second) of Torts § 767 cmt. b ("[u]nlike other intentional torts . . . [the tort of interference with contractual relations] has not developed a crystallized set of definite rules as to the existence or non-existence of a privilege to act. . . . Because of this fact, [Section 767] is expressed in terms of whether the interference is improper or not, rather than in terms of whether there was a specific privilege to act in the manner specified"). In particular, the Second Restatement defines the tort of intentional interference with prospective contractual relations as follows:

> One who intentionally **and improperly** interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
> > (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> >
> > (b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B (emphasis added).

The Pennsylvania Supreme Court has not explicitly adopted Section 766B of the Second Restatement. Nevertheless, both the Supreme Court and this Court have held that Restatement (Second) of Torts § 766 correctly restates Pennsylvania law regarding interference with existing contractual relations. *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978) ("[a]n examination of this case in light of Restatement (Second) of Torts, § 766 [defining the tort of interference with existing contractual relations], reveals that the sole dispute is whether appellees' conduct is 'improper'"); *Walnut Street Assocs.*, 20 A.3d at 478 ("[t]he question [in the case] is whether [the defendant's] intentional interference with [appellant's] contract was improper, and thus actionable"); *Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.*, 126 A.3d 959, 979 (Pa. Super. 2015) ("Pennsylvania law follows the Restatement (Second) of Torts § 766's standard for intentional interference with contractual relations"). Section 766 is written similarly to Section 766B and declares:

*(Footnote Continued Next Page)*

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts § 766.

In addition, both this Court and the Pennsylvania Supreme Court have held that Section 767 of the Second Restatement correctly restates the law of the Commonwealth – and Section 767 explicitly focuses upon the factors that should be considered in determining whether certain conduct is "improper." *Adler, Barish, Daniels, Levin & Creskoff*, 393 A.2d at 1184 (analyzing the propriety of the defendant's conduct by considering the factors listed in Section 767); *Ruffing v. 84 Lumber Co.*, 600 A.2d 545, 549-550 (Pa. Super. 1991) (same).  Finally, even though this Court continues to utilize the phrase "the absence of privilege or justification on the part of the defendant" to define the tort of interference with prospective contractual relations, a careful review of our decisions shows that this Court simply equates "the absence of privilege or justification on the part of the defendant" with the term "improper."  *Empire Trucking*, 71 A.3d at 934 ("the third element [of the tort] requires a showing that [defendant's] actions were not privileged.  Thus, in order to succeed in a cause of action for tortious interference with a contract, a plaintiff must prove not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper.  In determining whether a defendant's actions were improper, the trial court must take into account the [] factors listed in Restatement (Second) of Torts section 767") (some internal citations omitted).

Given that this Court equates "impropriety" with "the absence of privilege or justification on the part of the defendant" – and given that all of our recent precedent continues to utilize the phrase "the absence of privilege or justification on the part of the defendant" to describe the third element of the tort – we also use the phrase in this opinion.  Nevertheless, at some point, this Court should stop using the antiquated phrase that originated in the First Restatement of Torts and begin using the verbiage that appears in

Further, as this Court has held:

> the third element [of the tort] requires a showing that [defendant's] actions were not privileged. Thus, in order to succeed in a cause of action for tortious interference with a contract, a plaintiff must prove not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper. In determining whether a defendant's actions were improper, the trial court must take into account the [] factors listed in Restatement (Second) of Torts section 767.

*Empire Trucking*, 71 A.3d at 934 (some internal citations omitted).

Section 767 of the Second Restatement, entitled "Factors in Determining Whether Interference is Improper," declares:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and

*(Footnote Continued)* ─────────────

the Second Restatement, which, as we have said, accurately reflects the law of this Commonwealth.

- 18 -

(g) the relations between the parties.

Restatement (Second) of Torts § 767.

The trial court in this case instructed the jury on all of the Section 767 factors. ***See*** N.T. Trial, 5/14/15, at 788-789. Moreover, when the trial court instructed the jury on the fourth factor – "the interests sought to be advanced by the [defendant]" – the trial court included a "good faith" element. Specifically, the trial court instructed the jury that they should consider "the interest of the Defendants which they sought to advance by their conduct and whether Defendants advanced it in good faith." ***Id.***

Appellants now claim that the inclusion of the "good faith" language "fatally prejudiced" them and requires that we vacate the judgment and remand for a new trial. Appellants' Brief at 12. We disagree.

Read fairly, the trial court merely asked the jury to consider the **interests** the Defendants sought to advance and to consider also whether the **means** the Defendants utilized to advance their interests were in good faith – *i.e.* whether the Defendants advanced their interest with a "state of mind consisting in . . . observance of reasonable commercial standards of fair dealing in [the] given trade or business."[9] BLACK'S LAW DICTIONARY 713

---

[9] We note that Restatement (Second) of Torts § 773 provides a defense for an individual who asserts a *bona fide* claim. Section 773 declares:

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a

*(Footnote Continued Next Page)*

(8th ed. 2004).  As such, the trial court's instruction that the jury consider "whether Defendants advanced [their interests] in good faith" merely asked the jury to consider the "nature" of the Defendants' conduct.  Section 767 explicitly lists "[t]he nature of the [defendant's] conduct" as a factor that must be considered in "determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper."   Restatement (Second) of Torts § 767.  As the comment to Section 767 declares:

> The nature of the actor's conduct is a chief factor in determining whether the conduct is improper or not, despite its harm to the other person.  The variety of means by which the actor may cause the harm are stated in § 766, Comments *k* to *n*.  Some of them, like fraud and physical violence, are tortious to the person immediately affected by them; others, like persuasion and offers of benefits, are not tortious to him.  Under the same circumstances interference by some means is not improper while interference by other means is improper; and, likewise, the same means may be permissible under some circumstances while wrongful in others.  The issue is not simply whether the actor is justified in causing the harm, but rather whether he is justified in causing it in the manner in which he does cause it.  The

*(Footnote Continued)* _____

> third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

Restatement (Second) of Torts § 773.  However, the trial court did not instruct the jury on Section 773 of the Second Restatement of Torts.

propriety of the means is not, however, determined as a separate issue unrelated to the other factors. On the contrary, the propriety is determined in the light of all the factors present. Thus physical violence, fraudulent misrepresentation and threats of illegal conduct are ordinarily wrongful means and subject their user to liability even though he is free to accomplish the same result by more suitable means. A, C's competitor for B's business, may justifiably induce B by permissible means not to buy from C []; he is not justified in doing so by the predatory means stated above. Yet even these means are not always forbidden. The relation between the actor and the person induced, and the object sought to be accomplished by the actor, may be such as to warrant even physical violence. For example, C operates a gambling den in the rear room of his ice cream parlor. B's parent, A, having the privilege of corporal punishment, may exercise that privilege in order to cause B not to patronize C's ice cream parlor. This may also be the case between an institution and its inmates. The nature of the means is, however, only one factor in determining whether the interference is improper. Under some circumstances the interference is improper even though innocent means are employed.

Restatement (Second) of Torts § 767 cmt. c.

Or, in the words of the Pennsylvania Supreme Court:

The absence of privilege or justification in the tort [of interference with prospective contractual relations] is closely related to the element of intent. As stated by Harper & James, The Law of Torts, § 6.11, at 513: "where, as in most cases, the defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff, a line must be drawn and the interests evaluated. This process results in according or denying a privilege which, in turn, determines liability." What is or is not privileged conduct in a given situation is not susceptible of precise definition. Harper & James refer in general to interferences which "are sanctioned by the 'rules of the game' which society has adopted", and to "the area of socially acceptable conduct which the law regards as privileged."

*Glenn*, 272 A.2d at 899 (some internal corrections omitted).

In the case at bar, by instructing the jury that they must consider "whether Defendants advanced [their interests] in good faith," the trial court was simply instructing the jury to consider whether Defendants acted in such a way that was "sanctioned by the 'rules of the game' which society has adopted." *Id.* Therefore, the instruction was consistent with Pennsylvania law and did not amount to an abuse of discretion. Appellants' claim on appeal fails.

For Appellants' second argument on appeal, Appellants contend that the trial court erred when it instructed the jury on mitigation of damages. However, in this case, the jury found that Defendants were not liable. Therefore, even if the trial court erred in instructing the jury on mitigation of damages, the alleged error would be harmless. *See Goldstein v. Aronson*, 76 A.2d 217, 219 (Pa. 1950) ("[t]he instruction of the court was, therefore, erroneous but it affected only the measure of damages. The verdict of the jury against appellant made the question unimportant and the error harmless"). As such, Appellants' second claim on appeal does not entitle them to relief.

Judgment affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2016