J-A01026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MELLISSA A. STECKER, MARCELINO CARLOS CARVALHO SANTOS, MARIA C. SANTOS, AND MARCELINO J. SANTOS | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| | : | No. 1266 EDA 2020 |
| MERCEDES R. GOOSLEY, JOSEPH GOOSLEY, AND WILLIAM GOOSLEY | : : : | |
| APPEAL OF: WILLIAM GOOSLEY | : : | |

Appeal from the Judgment Entered June 23, 2020
In the Court of Common Pleas of Northampton County Civil Division at
No(s): No. C-48-CV-2018-02733

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 15, 2021**

Appellant, William Goosley, appeals from the judgment entered on June 23, 2020 following a non-jury trial regarding the sale of a residential property.[1] We affirm.

We briefly summarize the facts and procedural history of this case as follows.   Mercedes R. Goosley was the owner of the subject residential

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] While Appellant purports to appeal from the denial of post-trial motions on June 9, 2020, the appeal properly lies from the entry of judgment. ***See Crosby v. Department of Transportation***, 548 A.2d 281, 283 (Pa. Super. 1988)("[An a]ppeal lies from the judgment entered and not the denial of post-trial motions[.]")  We have changed the caption accordingly.

property located on Lynn Avenue in Bethlehem, Pennsylvania. Mercedes has six adult children – Stephen, Joseph, William, Chrissy, Mitzy, and Ronald. On October 21, 2013, Mercedes executed a notarized document giving Joseph power of attorney. Mercedes moved into Joseph's home in 2015 and lived with him for two years, until she was briefly hospitalized. Thereafter, Mercedes moved into Gracedale, a nursing home in Northhampton County, in June 2017. At the time, Mercedes was 90 years old and Appellant was living at the Lynn Avenue property.

Thereafter, acting under the power of attorney and as agent for Mercedes, Joseph listed the property for sale with a real estate agent. The Santos family[2] subsequently toured the property with a real estate agent. Joseph, Ronald, and Appellant were also present. During the tour, Appellant specifically showed the Santos family the room where he was staying. The Santos family made a formal offer to purchase the property and Joseph, acting as agent under Mercedes' power of attorney, accepted. The settlement date for the proposed transaction was originally scheduled for March 5, 2018, but changed to March 15, 2018, to allow Appellant time to move out of the property. In the interim, on February 27, 2018, Mercedes conveyed the deed

---

[2] Melissa A. Stecker, Marcelino Carlos Carvalho Santos, Maria C. Santos, and Marcelino J. Santos (collectively, the Santos family). The Santos family is not related to the Goosley family.

for the subject residence to Appellant, by notarized signature, at the Gracedale nursing home.

On March 28, 2018, the Santos family filed a complaint in equity against Mercedes, Joseph, and Appellant.[3]  On September 27, 2019, Appellant filed a motion for summary judgment and supporting brief, arguing he was entitled to judgment as a matter of law because Mercedes voluntarily conveyed the deed to the subject property to Appellant before Joseph entered into an agreement of sale with the Santos family.[4]  More specifically, and relevant to the instant appeal, Appellant alleged:

> [Appellant] previously resided with his mother at her residence [] for many years and served as caretaker for her.
>
> When Mercedes [] entered Gracedale Nursing Home in 2017 she had little, if any, funds to pay the monthly charge.  Through Gracedale, she applied for and was approved for Long Term Care Medical Assistance with the Pennsylvania Department of Human Services, and was granted Family Caregiver Exemption, which would allow her to transfer her residence [] to her son[, Appellant,] for his care of her.
>
> Unbeknownst to Mercedes [], and under pressure from her other children, Joseph [] listed the home [] for sale in January 2018.  The sale was not a [pre]requisite of [Mercedes] approval for Long

---

[3] Ultimately, after considering preliminary objections and the filing of two, amended complaints, the trial court allowed two counts, breach of contract and interference with contract, to proceed to trial.  In *lieu* of monetary damages, the Santos family sought an order of specific performance directing enforcement of the agreement of sale for the subject property.

[4] Defense counsel representing Appellant, Joseph, and Mercedes filed the motion for summary judgment and supporting brief.  Mercedes and Joseph, however, are not parties to the current appeal.

Term Medical Assistance, as the house was an exempt asset to be transferred to the family caregiver, [Appellant].

On or about February 5, 2018, [the Santos family] entered into a contract with [] Joseph [], who was purportedly acting on behalf of [] Mercedes [] for the purchase of the property[.] The agreement of sale […] simply listed the seller as "Mercedes Goosley CO Joseph Goosley" and is simply signed as "Joseph Goosley." There is no indication or suggestion that Joseph was acting as apparent agent for Mercedes[.]

In October 2013, Joseph [] purchased a Power of Attorney [form] online and had his mother sign it before a notary public. The Durable Power of Attorney […] was a "springing" power of attorney, meaning that it would only become operative and effective upon the meeting of a condition, which in this case required Mercedes [] to be "incapacitated or disabled so that as a result [she was] not able to manage [her] financial affairs in which case [the power of attorney] shall become effective as of the date of [a] written statement to be provide[d] by a physician[.]

\* \* \*

Mercedes [] wanted her son, [Appellant,] to live in the house and admitted so during a competency evaluation performed by Dr. Paige Van Wirt on March 7, 2018[.] Mercedes [], by her own hand, signed a deed transferring the house to [Appellant] on February 27, 2018.

Brief in Support of Summary Judgment, 9/27/2019, at 2-4.

On November 12, 2019, the trial court entered an order denying

Appellant's motion for summary judgment, stating:

Material issues of fact remain as to Mercedes['] intentions regarding the subject property; whether Mercedes [] granted actual or apparent authority to Joseph [] to enter into the [a]greement of [s]ale regarding the subject property; whether [Appellant] had knowledge of the existing [a]greement of [s]ale at the time the deed was transferred to his name; whether [Appellant] exerted improper influence in obtaining the deed to the [s]ubject [p]roperty; and credibility determinations of the witnesses which can only be made by the fact finder.

Trial Court Order, 11/12/2019.

- 4 -

The trial court held a non-jury trial on January 28, 2020 wherein Appellant, Joseph, Stephen, and Ronald testified. Other trial witnesses included the real estate agent involved with the sales agreement between Joseph and the Santos family, the notary who was present for the deed transfer from Mercedes to Appellant, and three members of the Santos family. Appellant also presented the report of Dr. Paige Van Wirt, as mentioned briefly above.

On February 10, 2020, the trial court entered an order "wherein the conveyance to [Appellant from Mercedes] was declared null and void and the equitable remedy of specific performance was granted to" the Santos family. Trial Court Opinion, 6/9/2020, at 3. Appellant filed a timely post-trial motion on February 19, 2020. At the conclusion of a conference on March 4, 2020, the trial court issued an order that, *inter alia*, recognized that Mercedes "passed away following the trial in this matter" and directed Joseph, as Mercedes' named executor, to probate her will. The order further directed the parties to file briefs regarding Appellant's request for post-trial relief. The parties complied timely. On June 9, 2020, the trial court entered an opinion and order denying Appellant's motion for post-trial relief. On June 23, 2020, Appellant filed a *praecipe* to enter judgment in favor of the Santos family. This timely appeal resulted.[5]

_____

[5] "[T]he proper, procedural course to pursue in perfecting an appeal from [a] verdict is to reduce the verdict to judgment and take an appeal therefrom and

On appeal, Appellant presents the following issues for our review:

Is [Appellant] entitled to a new trial or other post-trial relief when the trial court abused its discretion and/or misapplied the law by:

a. Determining the trial court did not err[] or abuse its discretion in crafting the equitable decision that the deed from Mercedes [] to [Appellant] was null and void *ab initio*.

b. Determining that a new trial should not be granted.

c. Determining that the [a]greement of [s]ale [between Joseph and the Santos family] was a valid enforceable contract that could be completed.

d. Determining that the medical report from Dr. Paige Van Wirt was not an expert report, and by failing to factor in the report's conclusions in its decision.

e. Determining that [] witnesses Steven [] and Ronald Goosley were credible.

Appellant's Brief at 5.

The thrust of Appellant's claim asserts that he is entitled to a new trial.

Our standard of review is well-settled:

Our standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court

_____

not from an order denying post-trial motions." ***Crosby***, 548 A.2d at 283. Moreover, a "verdict [does] not become final for purposes of appeal until properly reduced to and entered as a formal judgment under Pa.R.C.P. 227.4." ***Crystal Lake Camps v. Alford***, 923 A.2d 482, 488 (Pa. Super. 2007). Here, judgment was entered on June 23, 2020 and because the appeal properly lies from the entry of judgment, we have amended the caption accordingly. Appellant filed a notice of appeal on June 23, 2020. On June 26, 2020, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on July 16, 2020. On July 29, 2020, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) that relied upon its earlier decision issued on June 9, 2020.

clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the [factfinder's] judgment.

Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

*Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 98–99 (Pa. Super. 2011)

(internal citation, original brackets, and ellipsis omitted).

Furthermore, we recognize:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial.

It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Wolf v. Santiago,* 230 A.3d 394, 399–400 (Pa. Super. 2020) (internal

brackets omitted).

For clarity and ease of discussion, we will address the issues in a different order than presented by Appellant. We first address an evidentiary claim, Appellant's issue (d) as presented above. Appellant contends that the trial court committed an error of law or abused its discretion in determining that the medical report from Dr. Paige Van Wirt was not an expert report and by failing to consider the report's conclusions in rendering its decision. Appellant's Brief at 27-29.

At trial, counsel and the trial court discussed whether the report written by Dr. Van Wirt (dated March 7, 2018 and based upon an examination of Mercedes while she resided at Gracedale nursing home) qualified as an expert report. N.T., 1/28/2020, at 91-94. In her report, Dr. Van Wirt opined that Mercedes "had the capacity to address the decision about what she wants done with the house," however, because Dr. Van Wirt did not state that her opinions were formed within a reasonable degree of medical certainty, the trial court ruled that it would "not [] accept [them] as [] expert opinion[s]." *Id.* at 94. Appellant did not object. *Id.* Moreover, Appellant agreed to "submit [the report] as evidence and let the factfinder [] make any inferences from the report." *Id.*

It is settled that the failure to make a contemporaneous objection waives an issue on appeal. *See Parr v. Ford Motor Co.*, 109 A.3d 692, 709 (Pa. Super. 2014). Further, even if Appellant did raise a contemporaneous objection, his failure to cite to that objection renders his claim unreviewable on appeal. *See* Pa.R.A.P. 2119(e); Pa.R.A.P. 2117(c) (where an issue is not

reviewable unless raised or preserved below, an appellate brief must set forth specific references to the places in the record where the question was timely and properly raised below so as to preserve the issue on appeal). Appellant failed to provide this Court with a citation to the record showing he lodged an objection contemporaneous to the trial court's determination that the report did not qualify as an expert report. We therefore find that Appellant waived his current contention regarding Dr. Van Wirt's report.

Next, we address Appellant's claim that the trial court erred by finding the trial testimony of Steven and Ronald credible. *See* Appellant's Brief at 29-30. Appellant contends "the obvious bias and animosity of Steven and Ronald [] should not have been ignored by the [trial court] in making [its] decision on credibility." *Id.* at 29. He claims "[b]oth brothers stood to lose by allowing [Appellant] to have the house." *Id.* at 29-30. Appellant, however, does not cite any legal authority to support this allegation and we find it waived. We have stated:

> The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities. This Court will not consider the merits of an argument which fails to cite relevant case [law] or statutory authority. Failure to cite relevant legal authority constitutes waiver of the claim on appeal.
>
> [When an appellant] fail[s] to cite any legal authority to support [his] single-paragraph argument [such] failure [] waives the issue for purposes of review. *See* Pa.R.A.P. 2101 [and] 2119(a).

*In re Est. of Whitley*, 50 A.3d 203, 209–210 (Pa. Super. 2012) (internal case citations omitted).

Even if Appellant did not waive this issue, we have previously determined:

> The credibility of witnesses is an issue to be determined by the trier of fact. On appeal, this Court will not revisit the trial court's determinations regarding the credibility of the [witnesses].

*Garwood v. Ameriprise Fin., Inc.*, 240 A.3d 945, 948 (Pa. Super. 2020), citing *Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 667 (Pa. Super. 2014). For all of the foregoing reasons, Appellant is not entitled to relief on his credibility claim.

Appellant's remaining three issues are inter-related and we will examine them together. Appellant generally contends that "[t]he decision to grant [the Santos family] specific performance and declare the deed [from Mercedes to Appellant] null and void *ab initio* was against the weight of the evidence presented at the time of trial and constituted an error of law or abuse of discretion." Appellant's Brief at 13. He claims the trial court erred by determining he interfered with contractual relations, arguing he "was justified in any actions he took to protect his equitable interest in the property" because of his status as caregiver.[6] *Id.* at 13; *see also id.* at 20-21. Additionally,

_____

[6] Appellant claims that 55 Pa. Code § 178.104(e)(ii) and (iv), which he refers to as the "caregiver exemption," "gave him the right to receive the house from [] Mercedes, without penalizing her eligibility for medical assistance to cover her long term care at Gracedale Nursing home." Appellant's Brief at 16-17. The pertinent subsections of Section 178.104(e) provide for the transfer of property to:

- 10 -

Appellant asserts that there was no evidence that he "had actual knowledge of the existence of the agreement of sale, nor evidence of the prospective contractual relations between" the Santos family and Mercedes. *Id.* at 20.

---

> (ii) The individual's child who is under 21 years of age, or blind or permanently and totally disabled as determined under § 140.81 (relating to deductions from earned income), or is blind or disabled based on SSI criteria as specified in 42 U.S.C.A. § 1382c(a)(3).
>
> *     *     *
>
> (iv) A son or daughter of the individual, other than a child described in subparagraph (ii), who resided in the individual's home for at least 2 years immediately before the date the individual became an institutionalized individual and who provided care to the individual which permitted the individual to reside at home rather than in an institution or facility.

55 Pa. Code § 178.104(e)(ii) and (iv).

In support of this aspect of this claim, Appellant argues that his "right to have the property transferred under the caregiver exemption was confirmed by the Department of Human Services, Estate Recovery Unit **after** trial." Appellant's Brief at 17 (emphasis added). Appellant attached a copy of "a letter confirming that [Appellant] qualified for the caregiver exemption" to the reproduced record for our consideration. For the reasons that follow, however, we may not consider this evidence.

> It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in this case.
>
> Under our Rules of Appellate Procedure, those documents which are not part of the 'official record' forwarded to this Court are considered to be non-existent.... And, these deficiencies may not be remedied by inclusion in a brief in the form of a reproduced record. It is well settled that an appellate court may consider only those facts which have been duly certified in the record on appeal.

*Bennyhoff v. Pappert*, 790 A.2d 313, 318 (Pa. Super. 2001) (internal citations omitted).

- 11 -

Appellant argues he was only aware that the Santos family "toured the house" and that Joseph "told him he would need to leave at some point." *Id.* Finally, Appellant argues that the trial court erred by determining that the agreement of sale was a valid and enforceable contract. *Id.* at 22-27. He claims that Joseph lacked authority, actual or apparent, under the power of attorney in effect because: (1) there was no indication on the sales agreement that Joseph was acting as Mercedes' agent; (2) the power of attorney only became effective upon a physician's written determination that Mercedes had become incapacitated or disabled, which did not occur; (3) the real estate agent, acting as dual agent for both Joseph and the Santos family, failed to verify and/or provide written acknowledgment of Joseph's power of attorney prior to listing the house and entering the agreement of sale; (4) "title to the property could never have been transferred to the [Santos family] by Joseph[], as the title insurance company would not have been able to issue title insurance." *Id.* at 23-27. Distilling these arguments, Appellant essentially contends that Joseph lacked the authority to enter into the sales agreement on behalf of Mercedes and that Appellant could not have intentionally interfered because he did not know about the sale and was only protecting his legal interest in the property under the caregiver exemption.

We have previously determined:

Agency is a relationship whereby the principal manifests assent that another person (the agent) will act on the principal's behalf subject to the principal's control, and the agent agrees to do so. An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent

authority, and/or (4) authority by estoppel. Agency cannot be inferred from mere relationships or family ties, and we do not assume agency merely because one person acts on behalf of another. Rather, we look to facts to determine whether the principal expressly or impliedly intended to create an agency relationship. To that end, family ties may be relevant when considered with other factors evincing agency. Finally, the party asserting the agency relationship bears the burden of proving it by a preponderance of the evidence.

\*          \*          \*

Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. An agent cannot simply by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent.

***Wisler v. Manor Care of Lancaster PA, LLC***, 124 A.3d 317, 323-324 (Pa.

Super. 2015) (internal citations and quotations omitted).

In this case, the trial court concluded:

Here, Mercedes executed a power of attorney on October 21, 2013. Mercedes was the principal, Joseph was her agent, and Ronald was successor agent. Joseph believed that the power of attorney gave him the immediate and unencumbered power to act on behalf of Mercedes.

Consistent with the apparent authority which Joseph had as the agent for Mercedes, [the trial] court concluded that Joseph was not fully aware that the power of attorney was a "springing" power of attorney. Joseph testified that he obtained [a] power of attorney form from the internet to save money. The power of attorney had boilerplate or form language that contained a condition precedent that Joseph would become the agent only after Mercedes would be declared incompetent by a physician. [] Joseph expressed not even knowing that [this provision] was in this power of attorney.

Based on Joseph's testimony that he held himself out as an agent and routinely conducted affairs on Mercedes' behalf, [the trial court] found Joseph's testimony credible. It was reasonable[,

according to the trial court,] to conclude that Joseph and Mercedes believed that Joseph had the power to act as an agent on her behalf without the condition precedent of Mercedes being declared incompetent. Joseph testified to this belief at trial. Again, Joseph credibly testified that he acted and held himself out as his mother's agent on numerous occasions since 2013. Generally, an express authority is to be strictly construed. However, the instant matter involves the unique situation where the principal and the agent intended to enter into a general power of attorney, rather than a springing power of attorney. Based on those intentions, Joseph engaged in the ordinary course of activity as an agent under a general power of attorney. In other words, Joseph[] believed he had th[e authority to convey the property] under the concept of apparent authority. Joseph's actions for years established a pattern and practice that would be considered reasonable for a third party to rely upon. Further, there was no evidence that Mercedes restricted his agency in any way. This intent was further proven by testimony that after learning there was a condition precedent in the 2013 power of attorney, Mercedes and Joseph executed a general power of attorney without any conditions precedent so that Joseph could **continue** to act as an agent.

Trial Court Opinion, 6/9/2020, at 25-26 (case and record citations and some quotations omitted; emphasis in original).

We concur with the trial court as the record supports its assessment. Initially, however, we note that Joseph's subjective belief that he was acting as Mercedes' agent is irrelevant. However, the evidence herein supports the trial court's determination that Mercedes granted Joseph authority to act as her agent. Mercedes was in living in Joseph's care for the two years prior to moving into Gracedale nursing home and Joseph handled her financial affairs throughout that period and until the time of trial. Stephen and Ronald confirmed these facts. *Id.* at 4-6, *citing* N.T., 1/28/2020, at 16-17 and 57. Joseph acted as Mercedes' agent beginning in 2013, when the power of

attorney was executed. *Id.* at 6. There was no evidence to suggest that Mercedes objected to Joseph acting on her behalf. Moreover, Mercedes' intent to appoint Joseph as her agent, without conditioning the appointment upon a finding of disability or incapacity, is buttressed by the subsequent execution of a general power of attorney giving Joseph authority to act as her agent without those conditions. Taken together, despite the springing provision in the 2013 power of attorney requiring a finding of disability or incapacity, it is clear that Mercedes intended that Joseph act as her agent. As such, Appellant's claim that the trial court erred by finding Joseph was acting under apparent authority lacks merit.

Finally, we turn to Appellant's contention that the trial court erred by finding he intentionally interfered with the sales agreement. This Court has stated:

> The requisite elements of a cause of action for interference with prospective contractual relations are as follows:
>
>> (1) a prospective contractual relationship;
>>
>> (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;
>>
>> (3) the absence of privilege or justification on the part of the defendant; and
>>
>> (4) the occasioning of actual damage resulting from the defendant's conduct.
>
> Further, as this Court has held:
>
>> the third element of the tort requires a showing that defendant's actions were not privileged. Thus, in order to succeed in a cause of action for tortious interference with a contract, a plaintiff must prove not only that a defendant

- 15 -

acted intentionally to harm the plaintiff, but also that those actions were improper. In determining whether a defendant's actions were improper, the trial court must take into account the factors listed in Restatement (Second) of Torts Section 767.

Section 767 of the Second Restatement, entitled "Factors in Determining Whether Interference is Improper," declares [] consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

Restatement (Second) of Torts § 767.

***Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.***, 150 A.3d 957, 964–966 (Pa. Super. 2016) (internal case citations and original brackets omitted).

In this case, as set forth above, Appellant contends that he did not know about the existence of a contractual, or prospective contractual, relationship between the Santos family and Joseph and that he was otherwise protecting his legal interest under the caregiver exemption under 55 Pa. Code § 178.104(e)(ii) and (iv). We examine each contention in turn.

First, upon review of the record, Appellant admitted that he knew the property was for sale, that he was present when the Santos family toured it, that the tour occurred before Mercedes transferred the deed to him, and that Joseph subsequently told him he would have to move out. *See* Trial Court Opinion, 6/9/2020, at 12-14; N.T., 1/28/2020, at 45-46 and 134-142. Moreover, the trial court noted that Appellant "arranged for the preparation of the deed without informing his siblings, and only informed one sibling after the deed" was executed. Trial Court Opinion, 6/9/2020, at 14. The trial court further recognized that Appellant's actions were "not coincidental" where the deed from Mercedes to Appellant was executed "after the execution of the agreement of sale [between Joseph and the Santos family], and prior to any final closing" *Id.* at 28-29. The trial court ultimately concluded that Appellant's actions "were purposeful in preventing the [Santos family] from pursing settlement in accordance with the settlement agreement [and] were surreptitious and done in a fraudulent manner[.]" *Id.* at 29. Thus, the trial court also considered the requisite factors in determining whether the interference was improper pursuant to Section 767 of the Second Restatement, including Appellant's conduct, motive, interests sought to be advanced, timing of the interference, and the relations between the parties. We discern no error. Appellant's claim that he did not know about the sale is belied by the record.

Moreover, regarding the caregiver exception, the trial court determined that "Mercedes and [Appellant] did not live together for three years prior to

her entering the county nursing home." *Id.* at 29. The trial court ultimately concluded that Appellant testified that "he had nowhere else to live" and "that this was the primary motivation for his interference with the contract in question." *Id.* We will not disturb the trial court's credibility determinations. Moreover, as previously mentioned, 55 Pa. Code § 178.104(e)(iv) provides for the transfer of property to an individual's son, under the caregiver exception, if he "resided in the individual's home for at least 2 years immediately before the date the individual became an institutionalized individual **and** who provided care to the individual which permitted the individual to reside at home rather than in an institution or facility." (emphasis added). Here, the record reflects that although Appellant may have resided at the subject residence for the two years before Mercedes was institutionalized, he was not simultaneously providing for her care during that time period in order to allow her to stay in the home. Instead, Joseph provided care to Mercedes which permitted her to reside at Joseph's residence. As such, we reject Appellant's contention that he was justified for interfering with the sales agreement. Accordingly, for all the foregoing reasons, Appellant is not entitled to relief.

Judgment affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/15/2021*